*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. NEVEU, Minor.

UNPUBLISHED
July 22, 2026
12:10 PM

No. 376713
Alger Circuit Court
Juvenile Division
LC No. 23-004600-NA

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, SN, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury to child), (b)(*ii*) (failure to prevent abuse and reasonable likelihood that abuse will occur if child is returned to parent), and (c)(*i*) (conditions leading to adjudication continue to exist). We affirm.

## I. FACTUAL BACKGROUND

The Department of Health and Human Services (DHHS) filed a petition in May 2023 requesting that the trial court take jurisdiction over SN following allegations that respondent physically assaulted her. Specifically, the petition alleged that respondent punched, kicked and choked SN, and that multiple firearms were recovered from the home. Criminal charges arising from the same incident were filed and respondent was later convicted of second-degree child abuse.

At a September 11, 2023 pretrial hearing, the parties discussed resolution of the adjudication through a plea. Because of the pending criminal case, respondent elected to enter a no-contest plea, which the court accepted and then entered an order of adjudication. Following adjudication, the trial court entered a dispositional order requiring respondent to comply with a case service plan (CSP) that included mental health treatment, parenting education, and a psychological evaluation. However, a no-contact order entered in the criminal case prevented him from having parenting time with SN. As a result, although reunification was the stated goal, respondent's ability to demonstrate progress, particularly through contact with SN, was significantly limited throughout the proceedings.

The case proceeded through a series of review hearings while the criminal case remained pending. During this period, respondent participated in some services but did not complete others, and his progress toward reunification remained constrained by the no-contact order and his custodial status. By August 2024, the criminal case was resolved, but the no-contact provision was expected to continue as a condition of probation. SN remained placed with relatives, where she was reported to be safe and stable.

In February 2025, DHHS filed a supplemental petition seeking termination of respondent's parental rights. The supplemental petition alleged that respondent failed to meaningfully benefit from services, remained inconsistent in mental health treatment, and did not complete required evaluations or programming. It also noted that respondent's conviction for second-degree child abuse and continuing no-contact order precluded reunification for an extended period. By the time contact could resume, SN would be nearing adulthood. The supplemental petition also indicated that SN feared respondent and did not wish to have contact with him.

At the termination hearing, testimony focused on respondent's limited progress in services, his ongoing issues with emotional regulation, and the barriers created by the no-contact order. A caseworker testified that termination was sought primarily due to respondent's lack of progress over time and the absence of a realistic path to reunification. Other witnesses similarly testified that respondent had not demonstrated sufficient benefit from services and continued to present safety concerns. In contrast, SN's counselor testified that SN had made significant progress in her current placement, felt safe there, and experienced anxiety at the prospect of contact with respondent.

The trial court found that statutory grounds for termination were established under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (c)(*i*), relying on respondent's history of abuse, his failure to benefit from services, and the lack of a reasonable likelihood of reunification within a reasonable time. It further found that termination was in SN's best interests, emphasizing her need for safety, stability, and permanency, as well as her expressed fear of respondent and her progress in her current placement. The court thereafter entered an order terminating respondent's parental rights.

## II. NO CONTEST PLEA

Respondent first argues that the trial court erred at the adjudication stage by accepting his no-contest plea without fully complying with the requirements of MCR 3.971.

As respondent concedes, because he did not object to the plea proceedings in the trial court, this issue is unpreserved. See *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019); *In re Pederson*, 331 Mich App 445, 462-463; 951 NW2d 704 (2020). Accordingly, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To obtain relief under this standard, respondent must establish that (1) an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights. *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if these requirements are met, reversal is warranted only when the error "seriously affect[ed] the integrity, fairness, or public reputation of the judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). Determinations regarding jurisdiction occur in the adjudicative phase. *Id*. In the adjudicative phase of the proceedings, the question is whether the trial court can take jurisdiction over the child, and, by extension, the respondent-parent, under MCL 712A.2(b). *In re Ferranti*, 504 Mich at 15. Exercising jurisdiction allows the court to enter dispositional orders, including an order to terminate parental rights. *Id*. "The court can exercise jurisdiction if a respondent-parent enters a plea of admission or no contest to allegations in the petition, see MCR 3.971, or if the Department proves the allegations at a trial, see MCR 3.972." *Id*.

As noted, respondent challenges the sufficiency of his no-contest plea. In particular, respondent argues that the trial court failed to (1) read on the record the allegations in the petition before the no-contest plea, (2) advise him that his plea could be used as evidence in future proceedings, and (3) inform him that he would be required to comply with a case service plan, and a failure to do so could lead to a termination of his parental rights.

"Due process and our court rules require a trial court to advise respondents-parents of the rights that they will waive by their plea and the consequences that may flow from it." *Id*. at 30. A trial court may not accept a plea to the allegations in a petition unless it is satisfied "that the plea is knowingly, understandingly, and voluntarily made." MCR 3.971(D)(1). To that end, the court must advise the respondent of the rights being waived and the consequences of the plea, including that the plea may be used as a basis for future proceedings affecting parental rights. See MCR 3.971(B); *In re Ferranti*, 504 Mich at 20-22. These are critical requirements because a respondent's plea is the mechanism by which the trial court acquires jurisdiction. *In re Ferranti*, 504 Mich at 15. Defects in the plea-taking process therefore implicate the fundamental fairness of the proceeding. *Id*. at 15, 30-31. The advice that must be provided to a parent entering a plea is set forth in MCR 3.971(B), which states:

> (B) Advice of Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> > (1) of the allegations in the petition;
> >
> > (2) of the right to an attorney, if respondent is without an attorney;
> >
> > (3) that, if the court accepts the plea, the respondent will give up the rights to
> >
> > > (a) trial by a judge or trial by a jury,
> > >
> > > (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
> > >
> > > (c) have witnesses against the respondent appear and testify under oath at the trial,
> > >
> > > (d) cross-examine witnesses, and

(e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

(4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

(5) if parental rights are subsequently terminated, the obligation to support the child will continue until a court of competent jurisdiction modifies or terminates the obligation, an order of adoption is entered, or the child is emancipated by operation of law. Failure to provide required notice under this subsection does not affect the obligation imposed by law or otherwise establish a remedy or cause of action on behalf of the parent;

(6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C).

We now turn to respondent's specific arguments.

With respect to the reading of the petition in open court, the trial court complied with this requirement at the May 12, 2023 hearing. There is no dispute that respondent and his counsel were present, that the May hearing occurred prior to the hearing where respondent entered his plea, and that the trial court read aloud the contents of the petition. Respondent's argument on this point is factually incorrect.

We next resolve respondent's argument that, at the September 11, 2023 hearing, the trial court failed to explain that the contents of the petition that respondent would be pleading no-contest to could be used in subsequent termination proceedings. In addressing this issue, some context is needed. At the start of the hearing, the court and parties discussed what had been addressed in chambers, which was the dilemma respondent faced with the dual proceedings, i.e., his desire to not prejudice anything in the criminal case and his desire to seek quick reunification with the child. In that context, the court discussed with respondent how a plea would impact the relevance of the petition allegations. Before swearing him in, the court first directly asked respondent whether he wanted to waive his procedural rights and his ability to contest the truthfulness of the petition:

THE COURT: All right. Thank you. Mr. Sleik, is it your desire then to waive the procedural trial right and offer a no contest plea to the truthfulness of the petition?

-4-

MR. SLEIK: Yes, your honor.

After that, the court informed respondent that the court would be making findings based on the petition and the truthfulness of it, and reiterated that a no-contest plea meant he was foregoing a challenge to the truthfulness of the petition:

> THE COURT:… if we accept a no contest plea - - well, I'm gonna start with the big one here. You understand that I'm going to review the petition - - and make findings based upon the truthfulness within it; do you understand that?
>
> MR. SLEIK: I understand that.
>
> THE COURT: The whole concept of no contest means you're not contesting the petition; do you understand that?
>
> MR. SLEIK: Yeah.

Soon after, the court again reiterated that a no-contest plea would result in respondent not challenging the truth of the petition, and not having a trial over the truth of the allegations:

> THE COURT:…Mr. Sleik, if we went forward then, and the Court is going to consider the petition's allegations as true because you're telling me that you want to do that, you understand that we wouldn't have a trial of any sort in this case.
>
> MR. SLEIK: Yes, sir.
>
> THE COURT: And that means no trial by jury, no trial by the Court.
>
> MR. SLEIK: I understand that.

Lastly, the court covered many of the other rights respondent was waiving, and at the end again reminded respondent that the "entirety of the file" would be considered when it came to any termination decision:

> THE COURT: So, I ask you, do you understand that if I accept a no contest plea, and I'm not doing that yet; there will come a time in this hearing where I ask you that question one more time for real, but right now we're just talking about the consequences that would come with that. Do you understand that?
>
> MR. SLEIK: Yes, I understand that.
>
> THE COURT: All right. So, if we accepted a no contest there would be no trial by jury or by the Court; do you understand that?
>
> MR. SLEIK: Yes, your Honor.
>
> THE COURT: And you're willing to give up those two rights?
>
> MR. BLOCH: Dean?

MR. SLEIK: Yes, your honor.

\* \* \*

THE COURT: …you'd be waiving the right to have the petitioner prove the case by preponderance of the evidence…do you understand that?

MR. SLEIK: Yes, I do.

THE COURT: You are willing to waive the right to see, hear, and question the petitioner's witnesses?

MR. SLEIK: Yes, I am.

THE COURT: You're willing to waive the ability to bring in witnesses to present your version of the events?

MR. SLEIK: Yes.

THE COURT: And you're willing to waive your ability to testify in contested trial where you would tell us your version of the events?

MR. SLEIK: Yes.

On this record, we cannot conclude that the trial court failed to properly advise respondent "of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights . . . ." MCR 3.971(B)(4). In fact, as outlined above, the record is replete with references by the court about how respondent's plea would preclude him from contesting the truthfulness of the petition allegations, and from petitioner having to prove any of those allegations. With counsel by his side, and having had many on and off the record discussions about the potential for a plea, respondent expressed that he understood these ramifications, and still wanted to plead no contest. The record does not support respondent's argument.

A main thrust of respondent's argument is what the trial court said after all of the above was discussed. After a few additional questions and answers, the court told respondent that he was *not* making any admissions that day that would be used against him in an ultimate termination request, though the "entirety of the file" would be considered:

> THE COURT: So, and you're not making any admissions today and therefore there would be nothing that you're admitting that we would be used against you in a ultimate termination request, but any ultimate termination request is going to consider the entirety of the file; do you understand that?

After respondent asked whether he could later add evidence to the file, to which the court indicated in the affirmative, the court summed up the point it was trying to make:

THE COURT: Right now, this is not a termination file.  If it is at some point requested, you'd have every ability to contest it, and I would consider the entire file.  That's all I'm trying to get …

Before the court could complete its sentence, respondent thanked the court for the clarification and indicated he understood how things would proceed.

Unlike respondent and the dissent, we do not conclude that this one somewhat ambiguous statement rendered his plea involuntary.  Indeed, with the clarification, the court was repeating what it said repeatedly before: with respondent's plea, the court would consider the petition allegations to be true, and those allegations and any other evidence submitted in the "entire file" would be considered in any subsequent termination decision.  Although the one statement that the no-contest plea would not be used against him was arguably not accurate, one comment did not render invalid the otherwise lengthy and thorough colloquy, particularly when respondent was very engaged in the discussions about whether, and how to enter a plea, and his counsel was also actively engaged in the hearing.

We also reject respondent's third argument for relief—that he was not advised that he would have to comply with a CSP, and if he failed to do so, termination of his parental rights could occur.  The difficulty respondent faces with this argument is that MCR 3.971 does not contain a requirement that the court provide that notice during the plea proceedings.  And respondent does not cite a court rule or statute containing such a requirement.  Instead, respondent cites *In re Pederson*, for that proposition.  But that decision only makes reference to the fact that the respondents were informed of the case service plan and its requirements when the Court was evaluating (in dicta) whether the alleged error affected the fairness and integrity of the proceedings.  See *In re Pederson*, 331 Mich App at 470-471.  The Court certainly did not superimpose a new requirement into the court rule.

Indeed, our conclusion is in line with *In re Pederson*, where the Court held that the failure to inform the respondents that their pleas of admission could be used as evidence at a later termination hearing did not constitute plain error:

Respondents in this case only take issue with the fact that the trial court failed to advise them that their pleas could "later be used as evidence in a proceeding to terminate parental rights" as required by MCR 3.971(B)(4).  Thus, unlike the parents in *In re Ferranti*, respondents in this case were informed of most of the rights that they were waiving, including their rights to a trial by judge or jury, to have witnesses against them appear, and to subpoena witnesses.  Moreover, the transcript of the plea proceeding supports that respondents reviewed the allegations in the petition with their attorney, who represented them at the plea hearing.  See MCR 3.971(B)(1) and (2).  The record also supports that respondents discussed the allegations contained in the petition with their attorney and considered their decision.  [*In re Pederson*, 331 Mich App at 467-468]

In reaching this conclusion, the *In re Pederson* Court recognized that *In re Ferranti* involved a complete failure to comply with MCR 3.971, while the failure in *In re Pederson* was singular.  And because the court covered the vast majority of the court rule with respondents, and at least

-7-

one of the statutory grounds had nothing to do with what occurred at the adjudication, it determined no plain error occurred affecting defendant's substantial rights. *Id*. at 469-471.

We reach the same conclusion here. The error in not clearly articulating that the plea could be used against him later in the proceedings did not affect respondent's substantial rights. Although defects in the plea-taking process that undermine the knowing and voluntary nature of the plea call into question the validity of the adjudication itself, *In re Ferranti*, 504 Mich at 31, the otherwise thorough record containing repeated reference to the plea establishing the truth of the allegations and respondent's inability to contest them, made respondent's plea knowing and voluntary.

Nor did the errors "seriously affect[] the integrity, fairness, or public reputation of the judicial proceedings." *In re Mota*, 334 Mich App at 311. As we have recounted, the trial court and the attorneys were very active in addressing respondent's concerns, relative to both what would occur in this matter, and how anything would impact the criminal matter. And, the court had lengthy interchanges with respondent, showing a great aptitude to resolve any concerns he had. In doing so, the court only misspoke on one occasion, but otherwise did not commit the errors respondent argues it did.[1] Respondent has not established plain error.

### III. STATUTORY GROUNDS

Respondent next argues that the trial court erred in finding statutory grounds to terminate his parental rights because it failed to consider DHHS's interference with his case service plan.

"[W]e review for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondent[] with the child." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). We also review for clear error "the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *Id*. at 343.

Respondent first asserts that DHHS failed to make reasonable efforts toward reunification by actively opposing the lifting of the no-contact order imposed as part of his criminal case. DHHS is required to " 'create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification.' " *In re Atchley*, 341 Mich App at 338-339, quoting *In re Hicks*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). DHHS did so here, and the court adopted the plan, ordering that respondent participate in mental health counseling, complete a psychological evaluation, and participate in MSU Extension parenting classes, among other requirements. But the court could not allow parenting time between respondent and SN unless the no-contact order in the criminal case was lifted.

---

[1] Curiously, respondent does not argue that the trial court failed to inform him about his appellate rights, see MCR 3.971(B)(6)-(8), but because he has appealed that issue after termination, as MCR 3.971(C) permits, any error was harmless and remedied by the appeal provision within subrule (C).

Respondent takes issue with DHHS's efforts to oppose lifting that order but ignores that it was his actions which led to the criminal case and imposition of the no-contact order, and his continued actions that convinced DHHS the no-contact order should remain in place. Respondent failed to accept responsibility for his physical assault of SN to his caseworkers or to the court, testifying that he made physical contact with SN, but did not physically harm her. Yet, he was convicted of second-degree child abuse. He also continued to exhibit inappropriate and threatening behavior, texting his caseworker that he could meet her near her home and naming the street she lived on, as well as posting on Facebook an article about the shooting of a foster family and writing he hoped they would all get shot. These incidents, and the events leading to SN's removal, all occurred while respondent was in therapy for anger management, among other issues. Furthermore, the lawyer-guardian ad litem expressed throughout the proceedings that SN remained afraid of respondent and did not wish to see him. Thus, while the no-contact order and DHHS's support for that order hindered respondent's attempts at reunification by preventing parenting time, we see no deficiencies in the DHHS's efforts on that basis.

We also reject respondent's additional arguments that DHHS "assured grounds for termination." Although respondent's therapist, Zachary LeVeque, testified that he believed psychological evaluations were typically reserved for measuring a person's cognitive functioning as opposed to mental health, that testimony hardly makes the record clear, as respondent argues, that a psychological evaluation was inapplicable. Rather, the psychological evaluation remained part of the court-ordered case service plan, and respondent failed to complete the evaluation. With regard to the MSU Extension courses, respondent testified that they often interfered with his work schedule. But the court found respondent's assertions that DHHS was unwilling to assist in solving the issue not credible, and we give deference to the trial court's determinations regarding credibility. *In re Mota*, 334 Mich App at 320 ("When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.") (quotation marks and citation omitted). See also *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) ("While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered."). Finally, respondent directs this Court's attention to his testimony that he completed the Nurturing Parenting Handbook included in the case service plan while incarcerated, but the caseworker who subsequently began handling his case demanded that he complete it again. The trial court, however, noted respondent's partial compliance with this portion of the case service plan, but nevertheless found that he did not complete it to DHHS's satisfaction, and the record supports that finding. His caseworker Cynthia Levin testified that he only completed the first six chapters of the Nurturing Parenting Handbook, and that no other chapters had been received that year (2025). Accordingly, we are not left with a definite and firm conviction that the trial court mistakenly found DHHS provided reasonable efforts toward reunification. *In re Atchley*, 341 Mich App at 338.

Beyond asserting that DHHS actively hindered his efforts toward reunification, respondent only substantively challenges the court's finding of statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*). Because a trial court need find only one statutory ground for termination, *In re Mota*, 334 Mich App at 320, and the trial court also terminated respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*) and (c)(*i*), we can affirm the trial court's statutory ground findings with no further analysis. Nonetheless, we hold that the trial court did not clearly err by

-9-

finding that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(b)(*i*).

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Termination is appropriate under MCL 712A.19b(3)(b)(*i*) where a child has suffered physical abuse, the parent's act caused the abuse, and "there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." Respondent pleaded no contest to the initial petition which alleged that respondent punched, kicked, and choked SN, and that multiple firearms were recovered from the home, and was convicted of second-degree child abuse. And the record supports the court's finding that there was a reasonable likelihood SN would suffer injury or abuse if placed back in respondent's home. As described above, respondent refused to take accountability for his actions and continued displaying inappropriate and threatening behaviors throughout the proceedings and while in therapy for anger management. Further, respondent failed to fully comply with, or benefit from his CSP, which serves as evidence that SN would be harmed if returned to his care. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

## IV. BEST INTERESTS

Finally, respondent argues that the court committed reversible error by failing to consider SN's placement with relatives as part of its best-interest determination.

> We review for clear error the trial court's determination of best interests. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses. [*In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citations omitted).]

"If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child." *In re Mota*, 334 Mich App at 320.

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to [the] parents' home within the foreseeable future, if at all. [*Id*. at 321 (quotation marks and citations omitted; alteration in original).]

"Furthermore, a child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination." *Id*. (quotation marks, citations, and alteration omitted).

"While a trial court must explicitly address a child's relative placement, its underlying reasoning need not be so specific." *In re Gentry*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 376583); slip op at 4 (quotation marks and citation omitted). Rather, "[b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." *Id*. at ___; slip op at 4 (quotation marks and citation omitted). Further, "a trial court's findings are generally sufficient if it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Id*. at ___; slip op at 5 (quotation marks and citation omitted).

Here, the trial court certainly recognized that SN had been placed with her aunt in Wisconsin, as it was discussed throughout the proceedings, including at the termination hearing, and the lawyer-guardian ad litem argued just before the court's best-interest determination that SN's continued placement with her family would be in SN's best interests. And the trial court stated explicitly that SN had made progress in that placement, and thrived in that new environment, and that returning her to her father in any reasonable amount of time would induce additional trauma. These findings are sufficient. Moreover, "our review of the issue would not be facilitated by a more detailed statement by the trial court . . . ." *Id*. at ___; slip op at 5.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford